UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

ROBERT WEBB DIGIROLAMO                           CASE NO. 19-10488
DEBTOR                                            CHAPTER 13

**MEMORANDUM OPINION**

Debtor Robert Webb Digirolamo objects to Proof of Claim 5-1 filed by Stephen Binning. Binning alleges that the debtor is liable to him for over $300,000 resulting from the debtor's faulty application of stucco on his custom-built home. The debtor's objection to Binning's proof of claim is sustained.

**FACTS and PROCEDURAL HISTORY**

Stephen and Kristen Binning contracted with Jerry Boudinot Construction, L.L.C. ("Boudinot") to build their home in 2003. Boudinot in turn subcontracted with the debtor's wholly owned company, All State Plastering, Inc. ("All State"), for stucco work on the project. The Binnings later sued Boudinot, All State, Penn American Insurance Company and XYZ Insurance Company to recover for construction defects.[1] Their original petition alleged that "[o]n or around August 10, 2009, [the Binnings] discovered several, soft, rotten sections in the exterior walls of the home due to moisture being trapped under the stucco."[2] More than four years after filing suit, the Binnings amended the petition to name the debtor personally as a defendant.[3] Digirolamo later filed a chapter 13 petition, staying the state suit against him before it went to trial.

---

[1] Debtor exhibit no. 2, Petition for Damages in *Binning v. Jerry Boudinot Construction, L.L.C., et al*, case no. 593235, Nineteenth Judicial District Court, Parish of East Baton Rouge, filed August 4, 2010.

[2] *Id*. at ¶ 6.

[3] Debtor exhibit no. 1, Amended Petition for Damages to Add Defendant and Request for Jury Trial.

The debtor objected to Stephen Binning's unsecured claim for $315,949.72[4] for lack of supporting documentation.[5] Digirolamo also contends that Binning's claim is prescribed. Binning responded[6] to the debtor's claim objection and later amended his claim to include supporting documentation. Binning and Digirolamo were the only witnesses at the evidentiary hearing on the claim objection.

## ANALYSIS

Proofs of claim must comply with Federal Rule of Bankruptcy Procedure 3001 and be filed on the "appropriate" Official Form.[7] A proof of claim executed and filed in compliance with the rule is *prima facie* evidence of a claim's validity and amount.[8]

The party objecting to a properly filed proof of claim carries the burden of supporting its objection with evidence of probative force equal to that of the allegations of the creditor's proof of claim.[9] "[O]nce an objecting party produces evidence rebutting a proof of claim, the burden then lies with whichever party would normally bear such burden under relevant substantive law."[10]

To rebut the *prima facie* effect of Binning's proof of claim, Digirolamo was tasked with "producing specific and detailed allegations that place the claim into dispute."[11] Determining

---

[4] Proof of claim 5-1.

[5] Digirolamo's Objection to Claim No. 5 of Stephen Binning [P-38].

[6] Binning's Opposition to Objection to Proof of Claim [P-59].

[7] Fed. R. Bankr. P. 3001(a).

[8] Fed. R. Bankr. P. 3001(f).

[9] *In re New Century TRS Holdings, Inc.*, 495 B.R. 625, 633 (Bankr. D. Del. 2013).

[10] *In re Woodhaven Townhouse Assoc., Inc*., 570 B.R. 546, 550 (Bankr. N.D. Texas 2017) (citing *In re Wyly*, 552 B.R. 338, 378 (Bankr. N.D. Texas 2016)).

[11] *In re Woodhaven Townhouse Assoc., Inc*., 570 B.R. 546, 550 (Bankr. N.D. Texas 2017).

whether Digirolamo's dispute of Binning's claim was sufficient to shift the burden back to Binning requires a review of the alleged debt on which the claim is based.  To overcome the *prima facie* effect of Binning's claim, Digirolamo had to introduce evidence "which, if believed, would refute at least one of the allegations essential to the claim."[12]

Binning's claim requires proof both that (1) the stucco work was faulty; and (2) that Digirolamo is personally liable for an obligation of his limited liability company.  Binning alleges that All State's stucco work on his home was defective and that Digirolamo is liable for the defects along with All State—a limited liability company with which Binning had no contract.  Binning hopes to pierce the limited liability company shield by proving that Digirolamo acted fraudulently by using All State to do stucco work without a license.  The evidence did not support that leap.

Digirolamo testified that Boudinot hired his company, All State, and that the company had no direct contractual relationship with the Binnings.  Further, the evidence established that Digirolamo himself had no contract with either the Binnings or Boudinot: Boudinot subcontracted with All State, not Digirolamo personally.  When All State finished its work on the Binning's home, it invoiced Boudinot, not the Binnings.  Accordingly, although All State worked on the Binning's home as a subcontractor, no privity of contract existed between either All State and the Binnings on the one hand, or Digirolamo and the Binnings on the other.

The evidence established that Digirolamo overcame the *prima facie* effect of Binning's proof of claim.  Accordingly, because Binning would bear the burden of proof under state law,[13] he bears the ultimate burden of proving the validity of his claim.[14]

---

[12]  *In re Today's Destiny, Inc.*, 2008 WL 5479109, *4 (Bankr. S.D. Texas 2008).

[13]  A party alleging that another is liable for damages bears the burden of proof.  *See Zimmerman v. Progressive Sec. Ins. Co.*, 174 So.3d 1230, 1235 (La. App. 2d Cir. 2015) (internal citation omitted).

[14]  In the end, the claimant must prove his claim, rather than the debtor "disprove" it.  *In re Martin*, 413 B.R. 12, 14 (Bankr. D.N.H. 2008) (citing *In re Campano*, 293 B.R. 281, 285 (D.N.H. 2003)).

Absent privity of contract between the Binnings and Digirolamo, Binning's claim can only be delictual—that is, a tort.[15] To establish the debtor's liability for tortious conduct, Binning had to prove by a preponderance of evidence "fault, causation, and damages."[16] Binning relies on several theories to hold Digirolamo liable: by dissolving, the corporation left him personally liable for its unpaid debts; by piercing the corporate veil based on alleged fraud; and by establishing that Digirolamo was its alter ego.

### All State is a Corporation in Good Standing.

Digirolamo testified that for a time after All State completed work for the Binnings, he let All State's charter lapse, leaving it not in good standing with the Louisiana Secretary of State. He also testified that All State has now been reinstated and is in good standing. Binning did not refute that testimony, and Binning's counsel agreed that All State was reinstated. Binning has cited no law showing that reinstatement was prospective only and left Digirolamo open to personal liability.[17] Therefore, Binning has not met his burden of proof on this issue.

### Binning Cannot Pierce the Corporate Veil.

Binning testified that the debtor was not a licensed contractor when he worked on the home. He contends that because the debtor was not a licensed contractor, the debtor is personally liable

---

[15] *See Gines v. D.R. Horton, Inc.,* 867 F.Supp.2d 824, 833-34 (M.D. La. 2012) (Because no privity of contract existed between the subcontractor and the homeowner, the homeowner's action against the subcontractor was in tort rather than contract.).

[16] *Zimmerman v. Progressive Sec. Ins. Co.*, 174 So.3d 1230, 1235 (La. App. 2d Cir. 2015) (internal citation omitted) ("In order to prove a prima facie case in an action for damages allegedly caused by the tortious conduct of the defendant, the plaintiff must prove three things: fault, causation, and damages."); *see also McCartney v. Columbia Heights Nursing Home Inc.*, 634 So.2d 927, 932 (La. App. 2d Cir. 1994) (plaintiff in a tort suit bears the burden of proving fault, causation and damages by a preponderance of evidence).

[17] Louisiana Revised Statute 12:1-1444 was effective January 1, 2015 and applies prospectively only. *LaSalle v. G.E.C., Inc*., 271 So.3d 328, 334 (La. App. 5th Cir. 2019). Binning did not introduce evidence of the date of lapse or reinstatement. However, the parties agree that All State's good standing only lapsed after All State worked on the Binnings' home and that the corporation at the time of the hearing had been reinstated and was in good standing.

for any damages that resulted.[18]  Binning's argument is that Digirolamo, as All State, fraudulently performed stucco work without a license, and therefore is personally liable for Binning's damages.

The Louisiana legislature enacted the "Business Corporation Act" of Title 12 (La. R.S. 12:101-1704) and repealed the former statutes (La. R.S. 12:1-12:178) effective January 1, 2015. The legislature gave no indication that the new act was to be applied retrospectively.  Therefore, the applicable law in effect when All State performed the work and when the state suit was filed was La. R.S. 12:95.  Section 95 of title 12 in relevant part provided then that a shareholder, officer or director who commits fraud is not entitled to the protection of the corporate shield:

> Nothing in this Chapter shall be construed as in derogation of any rights which any person may by law have against a promoter, subscriber, shareholder, director or officer, or the corporation, because of any fraud practiced upon him by any of such persons or the corporation, or in derogation of any right which the corporation may have because of any fraud practiced upon it by any of these persons.

"Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other."[19] "[I]ntent to deceive, or the equivalent thereof, is an essential element of fraud."[20]

Binning's argument hinges on whether Digirolamo intended to deceive Binning by undertaking stucco work on the residence while All State lacked a contractor's license.  Louisiana law requires contractors to be licensed to protect those who hire them against "incompetent,

---

[18] Post-Hearing Memorandum of Legal Issues in Support of Proof of Claim by Stephen Binning, p. 4 [P-100]. Binning relies on La. R.S. 12:1320 in his brief [P-100, p. 4], but the statute applies only to limited liability companies.  Debtor's exhibit no. 1, the state court Amended Petition, references All State's Articles of Incorporation. The evidence supports a finding that All State was a Louisiana corporation and so La. R.S. 12:95 is applicable, rather than the provision Binning cites.

[19] La. Civil Code art. 1953.

[20] *Bass v. Coupel*, 671 So.2d 344, 347 (La. App. 1st Cir. 1995).

inexperienced, unlawful, and fraudulent acts."[21]  But the threshold issue is whether All State was even *required* to have that license.

When All State worked on the Binnings' home, "residential building contractor" was defined as:

> any person who undertakes to, attempts to, or submits a price or bid or offers to any corporation, partnership, or individual who constructs a fixed building or structure for sale for use by another as a residence or who, for a price, commission, fee, wage, or other compensation, undertakes or offers to undertake the construction, or superintending of the construction of any building or structure which is not more than three floors in height, to be used by another as a residence, when the cost of the undertaking exceeds fifty thousand dollars.  The term "residential building contractor" includes all contractors, subcontractors, architects, and engineers who receive an additional fee for the employment or direction of labor, or any other work beyond the normal architectural or engineering services.…[22]

"Subcontractors"—including subcontractors who perform stucco work[23]—are considered "contractors" under Louisiana law.[24]

Binning admitted at trial that Digirolamo never represented that he was a licensed contractor; nor did Binning ever ask Boudinot whether his subcontractors, presumably including All State, were licensed.  Faced with this, Binning argues that Digirolamo's suppression of the truth that All State was not a licensed contractor was fraudulent.  But to "find fraud from silence or suppression of the truth, there must exist a duty to speak or to disclose information."[25]

---

[21]  La. R.S. 37:2150.

[22]  La. R.S. 37:2150.1(11) was effective from 2003 to August 14, 2007.  The amended statute requires that the undertaking exceed $75,000.

[23]  La. R.S. 37:2156.2(A)(12).

[24]  La. R.S. 37:2150.1(4)(b) and (13)(a).

[25]  *Greene v. Gulf Coast Bank*, 593 So.2d 630, 632 (La. 1992) (citing *Markey v. Hibernia Homestead Ass'n,* 186 So. 757, 764 (La. App. Orleans 1939)).

Digirolamo is not a sophisticated business person and did not finish high school. Whether or not Digirolamo misread the law and was indeed required to hold a license, no evidence established that Digirolamo had the "intent to deceive, or the equivalent thereof," which is an "essential element of fraud."[26] "Fraud cannot be predicated upon mistake…."[27] Binning points to no authority supporting a conclusion that merely lacking a contractor's license on these facts amounts to fraud. Rather, the evidence supports a finding and conclusion that the debtor did not defraud Binning.

Binning relies on *Ogea v. Merritt,*[28] another case involving a home construction dispute. Ogea had contracted with Merritt Construction, LLC, to build a home. Travis Merritt, the limited liability company's sole member, signed the contract on behalf of the limited liability company. Ogea sued both the LLC and Merritt for construction defects and a district court judgment holding both liable was affirmed by the appellate court, though it reduced the damage award. The Louisiana Supreme Court granted a writ of certiorari to consider "the limitation of liability afforded to a member of an LLC."[29]

The Louisiana Supreme Court reasoned that a limited liability company's member personal liability for the company's obligations depended on four factors:

> 1) whether a member's conduct could be fairly characterized as a traditionally recognized tort; 2) whether a member's conduct could be fairly characterized as a crime, for which a natural person, not a juridical person, could be held culpable; 3) whether the conduct at issue was required by, or was in furtherance of, a contract between the claimant and the LLC; and 4) whether the conduct at issue was done outside the member's capacity as a member.[30]

---

[26] *Bass v. Coupel*, 671 So.2d 344, 347 (La. App. 1st Cir. 1995).

[27] *Terrebonne Concrete, LLC v. CEC Enterprises, LLC*, 76 So.3d 502, 509 (La. App. 1st Cir. 2011).

[28] 130 So.3d 888 (La. 12/10/13).

[29] *Id.* at 894.

[30] *Id.* at 900-01.

The state supreme court concluded that "poor workmanship alone" was not enough "to establish personal liability."[31]

Although *Ogea* involved a limited liability company rather than a corporation such as All State, "LLCs are not different from corporations in any sense that would justify a different approach to such questions of personal liability."[32] Therefore, the four *Ogea* factors provide guidance for considering Binning's claim.

The first factor is not met because although fraud is a traditionally recognized tort, the court concludes that Digirolamo did not commit fraud.

The second factor is whether Digirolamo's conduct, performing stucco work without a license, was a crime. At the time Digirolamo performed the work, La. R.S. 37:2150.1(11) provided that in order to fit within the definition of a "residential building contractor" who must obtain a license, the "undertaking" had to exceed $50,000. Indeed, Digirolamo testified that he believed a Louisiana contractor's license was not necessary to perform stucco jobs of less than $50,000. No evidence of the amount of the "undertaking" was admitted and so whether it exceeded $50,000 was not proven. Additionally, All State's invoices to Boudinot totaled only $28,021.[33] Because Binning did not prove that All State was required to have a license, he did not satisfy the second *Ogea* factor.

---

[31] *Id.* at 905-06. Whether Merritt held a license was not at issue.

[32] *Id.* at 901 (citing 8 Glenn G. Morris & Wendell H. Holmes, LOUISIANA CIVIL LAW TREATISE: BUSINESS ORGANIZATIONS, § 44.06 (2013 ed.)).

[33] Binning exhibit N. Binning misinterprets La. R.S. 37:2150.1(11) by applying the $50,000 threshold to the entire cost of the home, rather than just All State's part. The licensing requirement for jobs in excess of $50,000 applies to each individual subcontractor's obligation. *See Dennis Talbot Co., Inc. v. Privat General Contractors, Inc.*, 60 So.3d 102 (La. App. 3d Cir. 2011) (subcontractor was required to be licensed because his work on the project exceeded $50,000). Binning's post-hearing memorandum represented that Digirolamo testified that he knew the Binning home cost more than $75,000 [P-100, p. 2], but Digirolamo never testified regarding the cost of the home.

As to the third and fourth factors, Digirolamo's work was done in furtherance of a contract between Boudinot and All State and in Digirolamo's capacity as an employee of All State.

Under the *Ogea* factors, Digirolamo is not personally liable for All State's errors and omissions, even if they were proven, because he did not commit a tort or crime and his work was done in furtherance of All State's contract and in his capacity as All State's employee.

### Binning Did Not Establish that Digirolamo is All State's Alter Ego.

Binning also seeks to hold Digirolamo personally liable for his damages under the theory of alter ego.[34] The following factors indicate that a shareholder or director is the alter ego of the corporation:

> 1) commingling of corporate and shareholder funds; 2) failure to follow statutory formalities for incorporating and transacting corporate affairs; 3) undercapitalization; 4) failure to provide separate bank accounts and bookkeeping records; and 5) failure to hold regular shareholder and director meetings.

Binning did not introduce any evidence to prove that Digirolamo was the alter ego of All State. Therefore, Binning has not met his burden of proof.

### Binning Did Not Prove that Either Digirolamo or All State Committed a Tort.

Even were the court to find that Digirolamo was personally liable as All State's alter ego, Binning failed to prove an essential element of tort—that "the conduct in question was a cause-in-fact of the resulting harm."[35] His attempt to introduce an expert report as evidence of fault and causation failed when the report was excluded because the expert was not available for cross-examination. Also, Binning's lay opinion that All State and Digirolamo were liable was in large part excluded for lack of personal knowledge.[36]

---

[34] Pre-Hearing Memorandum of Stephen Binning in Support of Claim No. 5, p. 11 [P-93].

[35] *Young v. First Nat. Bank of Shreveport*, 794 So.2d 128, 137 (La. App. 2d Cir. 2001).

[36] *See* Federal Rule of Evidence 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.")

Binning has not proven any damages as a result of All State's alleged errors and omissions. Sustaining the debtor's objection on these grounds moots the issue of prescription.

## CONCLUSION

Binning has not met his burden of proving his claim. Accordingly, the Debtor's objection to Binning's claim is sustained and the claim is DISALLOWED.

Baton Rouge, Louisiana, January 6, 2020.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE